IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                        |   |              |
|------------------------|---|--------------|
| HITHAM ABUHOURAN,      | : | CIVIL ACTION |
|                        | : | NO. 07-5513  |
| Plaintiff,             | : |              |
|                        | : |              |
| v.                     | : |              |
|                        | : |              |
| R.L. MORRISON, et al., | : |              |
|                        | : |              |
| Defendants.            | : |              |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    MARCH 17, 2011

## I.    INTRODUCTION

Plaintiff Hitham Abuhouran ("Plaintiff") brings this
<u>pro se</u> suit against the United States and seventeen current or
former employees of the Federal Bureau of Prisons ("Defendants").
Plaintiff's complaint contains seven counts relating to his
incarceration from August 2001 to June 2007.  Counts One and Two
plead Federal Tort Claims Act ("FTCA") claims against Defendants
for subjecting Plaintiff to excessive exposure to environmental
tobacco smoke and inadequate ventilation.  (<u>See</u> First Am. Compl.
¶¶ 112-25.)  Counts Three, Four, and Five are <u>Bivens</u>[1] claims
seeking redress for the same environmental tobacco smoke and
inadequate ventilation that Counts One and Two are predicated

---

[1]    <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narcotics</u>, 403 U.S. 388 (1971).

on.[2]  (See id. ¶¶ 126-48.)  Count Six is a Fifth Amendment Bivens

claim alleging "invidious discrimination by all defendants due to

[Plaintiff's] ethnicity and/or national origin."  (Id. ¶¶ 150,

152-55.)  Finally, Count Seven is a Bivens claim alleging that

Defendants violated the First Amendment by requiring incoming and

outgoing written correspondence to be in English.  (See id. ¶¶

156-60.)  In accordance with this Court's Order requiring the

same, (see doc. no. 53), Defendants moved for judgment on the

pleadings or, in the alternative, summary judgment.  Plaintiff

responded in opposition, and has since asked the Court to appoint

counsel.

As discussed below, Defendants' motion will be granted.

Therefore, Plaintiff's motion for appointment of counsel will be

denied.


## II.  BACKGROUND

### A.  Facts

Plaintiff, a "Jordanian by birth" who has been a United

States citizen since 1988, (see First Am. Compl. ¶ 23), is a

federal inmate who is currently housed at Camp Canaan in Waymart,

PA, (id. ¶ 3.)  Plaintiff's claims stem from Defendants' alleged

---

[2]    Counts Four and Five explicitly invoke the Eighth
Amendment and/or Bivens.  While Count Three does not, it refers
to Defendants' reckless disregard for Plaintiff's well being,
(see, e.g., First Am. Compl. ¶ 128), and therefore also seems to
be an Eighth Amendment Bivens claim.

acts and omissions from August 2001 to June 2007.  (See id. ¶ 22;
see also id. ¶¶ 113, 122, 133, 150, 157.)  During this time,
Plaintiff was incarcerated at two federal facilities:  the
Federal Detention Center in Philadelphia, Pennsylvania ("FDC")
and the Federal Correctional Institution in Elkton, Ohio ("FCI").
Plaintiff was housed at the FCI from August 2001 to July 2002,
and then again from March 2004 to June 2007.  (See id. ¶¶ 27; 51;
70.)  Plaintiff was at the FDC during the intervening period of
July 2002 to March 2004.  (See id.)  At both institutions,
Plaintiff was exposed to environmental tobacco smoke which,
according to Plaintiff, has contributed to his failing health.
(See, e.g., id. ¶¶ 98-99.)  Plaintiff was also subject to
correspondence restrictions during the relevant time period.
Specifically, Plaintiff was neither permitted to send nor receive
letters written in any language other than English.  (Id. ¶¶ 86-
88.)


    B.    Procedural History

        On March 24, 2006, Plaintiff filed his first suit
relevant to the instant proceedings in the United States District
Court for the District of Columbia, whereupon it was transferred
to the United States District Court for the Northern District of
Ohio.  The complaint in that case, which turns out to be the
initial iteration of the complaint presently before the Court,

pled two causes of action: (1) an Eighth Amendment _Bivens_ claim for injuries sustained due to environmental tobacco smoke and poor ventilation at the FDC and FCI; and (2) a Fifth Amendment _Bivens_ claim for race-based discrimination.

Judge Adams of the Northern District of Ohio dismissed with prejudice Plaintiff's claims arising out of his incarceration at the FCI for failure to state a claim, and dismissed without prejudice Plaintiff's claims arising out of his incarceration at the FDC for failure to exhaust administrative remedies. _See_ _Abuhouran v. Morrison_, No. 06-1207, 2006 WL 2334748, at *7 (N.D. Oh. Aug. 10, 2006) [hereinafter _Abuhouran_ I]. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of the FCI claims, but remanded the FDC claims based on _Jones v. Bock_, 549 U.S. 199 (2007), which held that exhaustion was an affirmative defense under the Prison Litigation Reform Act ("PLRA"). Following remand, the Northern District of Ohio transferred the case to this Court. Thereafter, Plaintiff filed the first amended complaint presently at issue.

Shortly after filing the abovementioned case, Plaintiff brought a second suit in the Northern District of Ohio. The complaint in this second suit contained nearly identical facts to those averred in the earlier suit and subsequently raised in Plaintiff's first amended complaint. This time, however, Plaintiff's complaint contained only one FTCA count against the

United States for environmental tobacco smoke and poor ventilation at the FDC and FCI.  Citing the preclusive effect of Plaintiff's prior case which was, at the time, on appeal with the Sixth Circuit, Judge Economus dismissed with prejudice Plaintiff's FTCA claim to the extent it involved conduct at the FCI.  See Abuhouran v. United States, No. 06-2505, 2007 WL 128908, at *4 (N.D. Oh. Jan. 12, 2007) [hereinafter Abuhouran II].

Recognizing that Plaintiff's claims pertaining to the FDC had been dismissed without prejudice in Abuhouran I, Judge Economus permitted Plaintiff to proceed "solely on [his] claim concerning the ventilation at FDC-Philadelphia."[3]  Id.  The case was subsequently transferred to this Court, which considered the remaining claim of inadequate ventilation at the FDC and granted summary judgment for the defendant because Plaintiff could not "raise a genuine issue of material fact that inadequate ventilation led to [environmental tobacco smoke] exposure, which was the causal connection for his injuries."  Abuhouran v. United States, 595 F. Supp. 2d 588, 595 (E.D. Pa. 2009) [hereinafter Abuhouran III].  The Third Circuit affirmed this Court's grant of summary judgment.  See Abuhouran v. United States, 389 F. App'x 179 (3d Cir. 2010).

---

[3]     Judge Economus held that any other claims relating to acts or omissions undertaken at the FDC had not been properly exhausted.

## III. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading;

rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

B.    Judgment on the Pleadings Standard

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Where, as here, a Rule 12(c) motion challenges the plaintiff's failure to state a claim upon which relief can be granted, the court evaluates the motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). See Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991).

Under this standard, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal

citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).


IV. DISCUSSION

Defendants argue that the Court should enter judgment

in their favor as to each of the seven counts in Plaintiff's complaint. Plaintiff's initial response, (see doc. no. 64), only addressed Defendants' arguments as to Count Seven, arguing that Defendants' motion was without merit because the correspondence restriction in question was imposed simply because Plaintiff is an ethnic Arab. Since that time, however, Plaintiff has filed a motion to vacate a prior order of this Court which Plaintiff evidently construed to dismiss his environmental tobacco smoke claims.[4] (See doc. no. 70.)

While Plaintiff's environmental tobacco smoke claims remain extant and Plaintiff's motion to vacate is therefore unnecessary, the Court will read it liberally, see Feliz v. Kintock Group, 297 F. App'x 131, 137 (3d Cir. 2008) (noting that pro se pleadings are afforded liberal construction), and treat it as an additional response to Defendants' summary judgment motion. Evaluating the merits of this latter motion will, as evidenced by complicated procedural history whereby Plaintiff has asserted substantially similar claims peppered with new time periods, require a careful parsing of Plaintiff's complaint. This memorandum turns to that task.

A.   Counts One and Two

As noted, Counts One and Two purport to plead FTCA

---

[4]    In support of this motion, Plaintiff cites newly discovered evidence that tobacco smoke is harmful.

violations against Defendants based on (1) Plaintiff's exposure to environmental tobacco smoke; and (2) the allegedly inadequate ventilation at the FCI and the FDC.  At the outset, it should be noted that this theory for relief does not permit suit against the various Federal Bureau of Prisons ("BOP") employees named in Plaintiff's complaint.  See Lackro v. Kao, --- F. Supp. 2d ----, No. 10-940, 2010 WL 3946296, at *4 (E.D. Pa. Oct. 8, 2010) (Robreno, J.) ("The FTCA permits plaintiffs to recover against the United States . . . but it prohibits suits against the employee of the United States whose acts or omissions may have led to the suit.").  This is far from the only problem with Counts One and Two of Plaintiff's complaint, however, as Plaintiff has already fully litigated this claim for most of the time periods at issue.

A party is barred from litigating a claim that was or could have been brought in a prior or subsequent suit for which a judgment was rendered if (1) the action involves the same parties or their privies; and (2) the claim sought to be litigated is the same as that previously adjudicated.  See Duhaney v. Attorney Gen., 621 F.3d 340, 347 (3d Cir. 2010) (listing the elements for claim preclusion); Greer v. County of Cook, 54 F. App'x 232, 235 (7th Cir. 2002) ("When two lawsuits are pending simultaneously in different courts, preclusive effect is given to the judgment that is entered first, regardless of the sequence in which the suits

were filed."). Here, Plaintiff bases his complaint on Defendants' actions from August 2001 to June 2007 but, as outlined in further detail below, has largely had this claim conclusively resolved for claim preclusion purposes.

### 1. FTCA Claims Based on Pre-2006 Conduct at the FCI

Judge Adams' August 10, 2006 order disposed with prejudice of Plaintiff's environmental tobacco smoke <u>Bivens</u> claims arising at the FCI from August 2001 to March 2006. When, in a separate suit, Plaintiff raised the same facts in support of an FTCA claim, Judge Economus filed a January 12, 2007 order dismissing all claims pertaining to conduct at the FCI due to the preclusive effect of Judge Adams' earlier decision. Thus, there can be no serious debate as to whether Plaintiff may proceed on Counts One and Two with respect to the dates ranging from August 2001 to March 2006; Plaintiff is barred from raising such claims in this action.[5] <u>See Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues <u>that were or could have been raised in that action</u>." (emphasis added)); <u>see also</u> <u>United States v. 5 Unlabeled Boxes</u>, 572 F.3d

---

[5]     This analysis is not altered by Plaintiff's inclusion of defendants Hoover and Johnson, employees of the FCI, who were not defendants when Judge Adams disposed of the <u>Bivens</u> claims in <u>Abuhouran</u> I. As noted, an FTCA claim may only be brought against the United States. <u>See Lackro</u>, 2010 WL 3946296, at *4.

169, 174 (3d Cir. 2009).

      2.   <u>Plaintiff's Remaining Claims</u>

That leaves Plaintiff's claims stemming from his detention at (1) the FDC from July 2002 to March 2004; and (2) the FCI from March 2006 to June 2007. The former was fully litigated before this Court in <u>Abuhouran</u> III. Indeed, upon the Northern District of Ohio's transfer to this Court of the remaining FTCA claim stemming from Plaintiff's incarceration at the FDC, the Court expressly considered Plaintiff's "claim of negligence" under the FTCA "for exposing [Plaintiff] to excessive amounts of environmental tobacco smoke . . . while in prison" and granted summary judgment in the defendant's favor. <u>Abuhouran</u> III, 595 F. Supp. 2d at 590, 596. Thus, Plaintiff is also barred from litigating the claims raised in Counts One and Two as they pertain to his July 2002 to March 2004 detention at the FDC. <u>See</u> <u>Allen</u>, 449 U.S. at 94.

The remaining period to consider is March 2006 to June 2007, during which time Plaintiff was incarcerated at the FCI. Although no court has previously resolved FTCA claims for this period, Defendants nevertheless argue Counts One and Two are barred by issue preclusion in light of this Court's conclusion in <u>Abuhouran</u> III that Plaintiff could not raise a triable issue of fact concerning actual injury from the environmental tobacco

smoke and inadequate ventilation to which he was allegedly subjected.[6]  Issue preclusion bars relitigation of an issue where "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'"  5 Unlabeled Boxes, 572 F.3d at 173 (quoting Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006)).

        Under the circumstances presented, the Court concludes that issue preclusion is inappropriate.  While the Court reviewed documentary evidence bearing on the instant FTCA claim stemming from Plaintiff's March 2006 to June 2007 incarceration at the FCI in Abuhouran III,[7] it did not have occasion to consider whether Plaintiff had a cognizable FTCA claim for this time period. Instead, the Court's inquiry was limited to whether Plaintiff could proceed to a jury on an FTCA claim arising from his confinement at the FDC.  Thus, the issue of whether Plaintiff could show an injury stemming from his March 2006 to June 2007 confinement at the FCI was never actually litigated.  For similar

_____

        [6]    Defendants also contend that Plaintiff has not exhausted administrative remedies for claims arising from March 2007 to June 2007.

        [7]    Specifically, the Court reviewed Plaintiff's medical records and Plaintiff's deposition testimony.  See Abuhouran III, 595 F. Supp. 2d at 595.

- 13 -

reasons, disposition of this matter was not necessary to this Court's prior decision.

Notwithstanding the foregoing, Defendants are entitled to summary judgment on this issue. Plaintiff indicated in his December 13, 2007 deposition that he was not currently suffering from respiratory problems. (See Def.'s Mot. For Summ. J., Ex. G.) This, of course, was taken after the period of incarceration Plaintiff bases the instant FTCA claim on, and indicates that Plaintiff has not sustained the requisite injury necessary to proceed on his claim. See Abuhouran III, 595 F. Supp. 2d at 595 (explaining that actual injury was required for Plaintiff to proceed on his FTCA environmental tobacco smoke claim). The medical records the Court reviewed in Abuhouran III similarly contradict Plaintiff's allegations of injury stemming from the period in question. See id.

Plaintiff has adduced no evidence providing a reason to doubt what his deposition testimony and medical records make clear: that he has not suffered any injury. Nor has Defendant even attempted to demonstrate that any actual injury was suffered. Consequently, no rational jury could find that Plaintiff has suffered an actual injury as to prevail on his FTCA claim for injuries sustained at the FCI from March 2006 to June 2007.[8] See Anderson, 477 U.S. at 248. Thus, for the reasons set

_____

[8] It is thus unnecessary to consider whether Plaintiff properly exhausted this claim in its entirety. See 42 U.S.C. §

- 14 -

forth above, Defendants' motion will be granted as to Counts One and Two.

## B.   Counts Three, Four, and Five

Counts Three, Four, and Five each plead Eighth Amendment Bivens claims based on the same allegations underlying Counts One and Two—i.e., the inadequate ventilation and environmental tobacco smoke to which Plaintiff was subjected from August 2001 to June 2007.  Defendants argue that judgment should be granted in their favor on these counts because (1) the judgment bar in 28 U.S.C. § 2676 precludes their litigation; (2) claim preclusion prevents relitigation of these claims; and (3) Plaintiff failed to exhaust his administrative remedies.  While each of these arguments provide a basis for dismissing Plaintiff's claims in whole or in part,[9] the Court's conclusion with respect to Counts One and Two resolves the matter under the FTCA's judgment bar.

Indeed, a judgment in an FTCA case bars any action

_____

1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief can be granted . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").  Nevertheless, the record demonstrates that Plaintiff did not exhaust administrative remedies for the March 2007 to June 2007 period.  (See Def.'s Mot. For Summ. J., Ex. A.)

[9]   Indeed, the claims pled do not appear to have been properly exhausted, (see Def.'s Mot. For Summ. J., Ex. C.), and are also subject to claim preclusion based on the other cases in which these or like issues have been adjudicated.

arising from the same subject matter against the government
employee whose acts or omissions led to the claim:

> The judgment in an action under section 1346(b) of this
> title shall constitute a complete bar to any action by the
> claimant, by reason of the same subject matter, against the
> employee of the government whose act or omission gave rise
> to the claim.

28 U.S.C. § 2676.  A claim is "of the same subject matter" for
these purposes when it arises "out of the same actions,
transactions, or occurrences."  Manning v. United States, 546
F.3d 430, 433 (7th Cir. 2008) (internal marks omitted) (quoting
Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d
840, 858 (10th Cir. 2005)).  Thus, where plaintiffs bring a
Bivens action against federal employees relating to the same
underlying conduct at issue in an FTCA claim, they "risk[ ]
having a judgment on the FTCA claims operate to bar their Bivens
theories."  Unus v. Kane, 565 F.3d 103, 122 (4th Cir. 2009).
This is true even if the FTCA and Bivens claims are brought in
the same suit.  See, e.g., Denson v. United States, 574 F.3d
1318, 1334 n.50 (11th Cir. 2009) (collecting authority and noting
that "[a] majority of courts have construed § 2676 as barring a
plaintiff's Bivens claims, irrespective of whether the Bivens and
FTCA claims were brought in the same lawsuit"); see also Manning,
546 F.3d at 433 ("[W]hen the district court in this case entered
a judgment in the FTCA claim, that judgment became a 'judgment in
an action under' the FTCA which 'constitute[d] a complete bar to

any action by the claimant,' and [the plaintiff's] <u>Bivens</u> claims
fell under the ambit of 'any action.'").

As discussed above, Defendants are entitled to judgment
with respect to Plaintiff's related FTCA claims brought in Counts
One and Two.  This disposition subjects Plaintiff's related
<u>Bivens</u> claims against the allegedly responsible BOP employees to
the FTCA's statutory judgment bar.  <u>See</u> <u>Kane</u>, 565 F.3d at 122
("[T]he court's summary judgment award on the FTCA claims
trigger[ed] the judgment bar provision of § 2676, and the
plaintiffs' . . . <u>Bivens</u> subclaims against the federal agent
defendants are thus barred.").  Consequently, Defendants' motion
will be granted as to Counts Three, Four, and Five.

C.   <u>Count Six</u>

Defendants next ask the Court to enter judgment in
their favor on Count Six, which pleads a Fifth Amendment <u>Bivens</u>
claim for "systematic and invidious discrimination which was
imposed upon plaintiff by defendants."  (First Am. Compl. ¶ 152.)
Defendants contend that this claim arises from the same facts
attendant to the environmental tobacco smoke claims asserted in
Counts One through Five, and therefore seek judgment under the
FTCA's judgment bar or by way of issue preclusion.  While
Defendants cannot be faulted for making this argument given the
conclusory and vague allegations contained in Count Six of

Plaintiff's complaint,[10] the Court cannot definitively conclude
that Count Six stems from Plaintiff's exposure to environmental
tobacco smoke or from any other conduct pled in Plaintiff's
complaint.  Consequently, the Court will liberally construe
Plaintiff's pleading to presume that Count Six involves a
distinct factual predicate from the other claims in Plaintiff's
complaint.

Of course, if it is indeed true that Count Six is
separate from Plaintiff's other claims, there is no principled
means by which the Court could determine what acts or omissions
led to Count Six's allegations.  This problem is intimately tied
to Plaintiff's failure to develop this theory of relief by way of
the BOP administrative process.  The BOP database reflects that
Plaintiff did not exhaust this claim or anything remotely
resembling it.  (See Def.'s Mot. For Summ. J., Ex. C (listing the
four issues for which Plaintiff properly exhausted administrative
remedies).)  This deficiency was duly raised by Defendants, (see
Answer, Fifth Affirmative Defense), and is fatal to Plaintiff's
due process claim, see 42 U.S.C. § 1997e(a) ("No action shall be

_____

[10]    Specifically, the allegations included under this Count
provide as follows:  (1) "From . . . August 2001 until June 10,
2007 . . . Plaintiff was subjected to a pattern of systematic and
invidious discrimination by all defendants due to his ethnicity
and/or national origin," (First. Am. Compl. ¶ 150); and (2) "The
pattern of systematic and invidious discrimination inflicted upon
plaintiff by defendants was not imposed as the result of any
compelling concern or reason, but rather, was done for the sake
of discriminating against plaintiff on the basis of his ethnicity
and/or national origin," (id. ¶ 153.)

brought with respect to prison conditions . . . by a prisoner

confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are

exhausted."); <u>Boyd v. United States</u>, 396 F. App'x 793, 795-96 (3d

Cir. 2010) (discussing BOP's administrative grievance process).

Therefore, the Court will grant Defendants' motion as

to Count Six. See <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 n.2 (3d

Cir. 2004) (noting that failure to exhaust administrative

remedies is an affirmative defense subject to dismissal following

a judgment on the pleadings motion). Count Six, however, will be

dismissed without prejudice.[11] See <u>Ahmed v. Sromovski</u>, 103 F.

Supp. 2d 838, 843 (E.D. Pa. 2000) ("Dismissal of a plaintiff's

---

[11] Thus, the Court need not address the merits of
Plaintiff's claims. It should be noted, however, that Plaintiff
faces several hurdles in proceeding on this theory. First, the
applicable statute of limitations may bar a claim. Second,
Plaintiff's claim may prove untimely under the BOP's
administrative deadlines. See 28 C.F.R. § 542.14. Third, at
least a portion of this claim may well be res judicata. See
<u>Abuhouran</u> I, 2006 WL 2334748, at *7. Fourth, Plaintiff's claim
may be subject to the judgment bar or issue preclusion if this
Court's generous assumption concerning the factual predicate for
Count Six is mistaken.

While these hurdles provide a colorable basis to
overlook Plaintiff's failure to exhaust administrative remedies
and dismiss his claim on the merits, see 42 U.S.C. § 1997e(c)(2),
the Court will, in view of his <u>pro se</u> status and the undeveloped
nature of the record before the Court, dismiss Count Six on
exhaustion grounds instead. Plaintiff, however, should note
these considerations in bringing any future action, keeping in
mind that he may be inviting the imposition of sanctions under
Rule 11's mandate that claims made be "warranted by existing law
or by a nonfrivolous argument for extending, modifying, or
reversing existing law or for establishing new law." Fed. R.
Civ. P. 11.

complaint without prejudice is appropriate when an plaintiff-
inmate has failed to exhaust his available administrative
remedies . . . ."), <u>aff'd</u> <u>sub nom.</u> <u>Ahmed v. Dragovich</u>, 297 F.3d
201 (3d Cir. 2002).

     D.  <u>Count Seven</u>

       Count Seven alleges that, from October 2001 to June
2007, Defendants violated Plaintiff's First Amendment rights by
requiring his incoming and outgoing correspondence to be written
in English.  Defendants urge that this restriction was
necessitated by security concerns related to Plaintiff's conduct.
Plaintiff, in turn, appears to contend that the real purpose of
the correspondence restriction was to punish him for being an
Arab after the tragic attacks of September 11, 2001.  As
discussed below, Defendants' motion will be granted because the
evidentiary materials of record do not support Plaintiff's
account of the facts.

     1.  <u>Legal Standard</u>

       It is well settled that "a prison inmate retains those
First Amendment rights that are not inconsistent with his status
as a prisoner or with the legitimate penological objectives of
the corrections system."  <u>Pell v. Procunier</u>, 417 U.S. 817, 822
(1974).  Thus, prisons may reasonably limit their inmates' speech

as necessary.  See, e.g., Abu-Jamal v. Price, 154 F.3d 128, 134

(3d Cir. 1998) (recognizing that prisons may properly limit

"speech that may include escape plans or incite other

prisoners").  At the threshold, determining whether such a

restriction comports with the First Amendment in the prison mail

context hinges on whether the restriction in question is applied

to incoming or outgoing mail.  Restrictions on incoming mail are

governed by the test articulated in Turner v. Safley, 482 U.S. 78

(1987) while restrictions on outgoing mail are governed by the

stricter test espoused in Procunier v. Martinez, 416 U.S. 396

(1974).  See Nasir v. Morgan, 350 F.3d 366, 371 (3d Cir. 2003)

("Because Thornburgh holds that Turner does not squarely overrule

Martinez as applied to outgoing mail, we will apply Turner to

incoming mail and Martinez to outgoing correspondence."); see

also Bowens v. U.S. Dep't of Justice, No. 08-590, 2009 WL

3030457, at *3 (M.D. Pa. Sept. 17, 2009).

        The test in Turner instructs the Court to consider the

following four factors in assessing a First Amendment claim:

> First, there must be a "valid, rational connection" between
> the prison regulation and the legitimate governmental
> interest put forward to justify it. . . .  A second factor
> relevant in determining the reasonableness of a prison
> restriction . . . is whether there are alternative means of
> exercising the right that remain open to prison inmates. . .
> .  A third consideration is the impact accommodation of the
> asserted constitutional right will have on guards and other
> inmates, and on the allocation of prison resources
> generally. . . .  Finally, the absence of ready alternatives
> is evidence of the reasonableness of a prison regulation.

Turner, 482 U.S. at 89-90 (internal citations omitted); see Nasir, 350 F.3d at 371. Martinez, by contrast, applies a two-part "strict scrutiny" test, see Turner, 482 U.S. at 83, to evaluate whether a restriction on speech offends the First Amendment:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. . . . Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

Martinez, 416 U.S. at 413, overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989). Nevertheless, the Court has clarified that, in applying this test, "the decisions of prison officials [should not be subject] to a strict 'least restrictive means' test." Thornburgh, 490 U.S. at 411. Instead, the challenged regulation must be "'generally necessary' to a legitimate governmental interest." Id. (quoting Martinez, 416 U.S. at 414).


    2.  Application

    As noted, Defendants argue that the correspondence restriction employed in this case were a product of security concerns. This contention is supported by Defendants' Rule 30(b)(6) deponent's deposition testimony.[12] Indeed, as

_____

    [12]    On April 1, 2010, the Court ordered Defendants to designate a deponent with respect to Plaintiff's First Amendment claim. (See doc. no. 48.)  Defendants selected Danine Adams, who

- 22 -

Defendants' deponent explained following a review of Plaintiff's

prison record:

> [T]he warden received information . . . that Inmate
> Abuhouran . . . was using a third party to attempt to
> communicate with known fugitives who were his codefendants,
> who were in Jordan.

> The restrictions were also based on the fact that his
> correspondence was in Arabic and could not be efficiently
> translated at the institution.  And that was important
> because previously he had been involved in a situation -- in
> a plot at another institution where Arabic -- his use of
> Arabic was related to an escape that allowed these people to
> get to Jordan, and that was orchestrated via his use of
> Arabic.  The restrictions were also based on correspondence
> that was reviewed that contained coded language.

(See Def.'s Mot. For Summ. J., Ex. H.)

Additional evidence of record supports this account.[13]

For example, a February 12, 1998 letter from the Assistant United

States Attorney to the Special Investigative Supervisor of the

BOP's Northeast Region stated that the Plaintiff and his co-

defendant brother intended to attempt an escape from prison.  The

letter further explained that two of Plaintiff's other co-

defendants—his siblings Adham and Adma Abuhouran—had already

successfully fled the country for Jordan while being held on home

detention, and that Plaintiff was aware of his siblings' escape

plan and advised them to that end.  Moreover, as Plaintiff

---

Plaintiff deposed on May 13, 2010.  (See Def.'s Mot. For Summ.
J., Ex. H.)

[13]     Some of this evidence was submitted after the Court
entered an Order requiring Defendants to turn over all available
documentary evidence relating to Plaintiff's correspondence
restriction.  (See doc. no. 69.)

acknowledges in his affidavit in opposition to Defendants'
summary judgment motion, he has received the alleged coded
communications while in prison:

> [T]he alleged coded language was a letter from an inmate who
> had left the prison system and wrote me a letter letting me
> know where he was . . . .  The letter was written in English
> and the coded allegations relates to the heading of the
> letter "Hello from the Commomwealth [sic] of Mass" . . . .

(Pl.'s Opp. To Defs.' Mot. For Summ. J., Aff.)

Nevertheless, Plaintiff contends that the restriction
at issue was precipitated by racial animus following the
September 11, 2001 terrorist attacks.  In support of this
contention, Plaintiff submits an affidavit in which he claims
that Defendants are concealing evidence revealing their true
motives, and that he was informed by one of the named defendants
that the correspondence restriction was "because of the 9/11
tragedy."  (Id.)  Plaintiff further avers in his affidavit that
he was not subjected to any correspondence restrictions before
September 11, 2001 and that no other foreigners in prison were
subjected to similar restrictions during the time in question.
(Id.)

The dispute in this case therefore turns on whether
Plaintiff's account of the facts is adequately supported by the
evidentiary record when viewing the facts and drawing all
inferences in his favor.  See Pignataro, 593 F.3d at 268.  After
all, if the restrictions in question were implemented for the

security reasons Defendants advance, there could be no serious

question as to whether the regulation passes constitutional

muster under both <u>Turner</u> (for Plaintiff's incoming mail) and

<u>Martinez</u> (for Plaintiff's outgoing mail).[14]  See, e.g., Smith v.

Epps, No. 07-43, 2010 WL 437075, at *2-5 (N.D. Miss. Feb. 2,

2010) (applying Turner and Martinez and rejecting prisoner's

challenge concerning prison officials' refusal to deliver

incoming and outgoing mail written in French).  Correspondingly,

---

[14]     Given the security concerns Defendants raise, the
restriction would plainly satisfy <u>Turner</u>.  First, the requisite
"valid, rational connection" exists between the regulation and
the government interest in question because Plaintiff posed a
prison security threat that could not effectively be dealt with
unless the prison staff could understand the letters it was
monitoring.  Second, utilizing this restriction was not unduly
intrusive because Plaintiff retained the ability to exercise his
First Amendment right to speak in Arabic in other ways; only his
incoming and outgoing written correspondence to others was
limited to English.  Third, it is clear that lifting the
restriction would have imposed a considerable burden on prison
resources as Plaintiff's mail would have had to be sent to
Washington to be translated and returned for review by the prison
staff.  (<u>See</u> Def.'s Mot. For Summ. J., Ex. H.)  Finally, no
"ready alternatives" to this burdensome protocol or
implementation of the correspondence restriction existed when the
restriction was in place.  (<u>See id.</u>)  Now that an alternative for
prompt translation of correspondence in all languages exists,
(<u>see id.</u>), Plaintiff's correspondence restriction has been
lifted.

     <u>Martinez</u> would also not be offended by imposition of
the restriction.  The government had a substantial governmental
interest entirely unrelated to the suppression of expression.
<u>See</u> <u>Abu-Jamal</u>, 154 F.3d at 134.  Indeed, the content of
Plaintiff's speech was not limited in any way; only the manner in
which it was communicated was impacted.  While not the only
conceivable means of furthering the government's interest in
security, the restriction in question was undoubtedly "generally
necessary" to that end.  Thornburgh, 490 U.S. at 411.

- 25 -

if Plaintiff were correct that the restriction was imposed solely due to ethnic animus, the restriction would clearly be improper under the governing tests.

While this Court is tasked with viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, see Pignataro, 593 F.3d at 268, it does not do so in a vacuum.  Rather, as the Supreme Court noted in Scott v. Harris, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. 372, 380 (2007).  Here, a rational jury would not be able to find in Plaintiff's favor because the evidentiary record shows that the restrictions were prompted by security concerns; Plaintiff's averments that ethnic status was a factor does nothing to rebut the plethora of legitimate reasons Defendants have proffered in support of the restriction's implementation.

Indeed, the strongest facts Plaintiff advances regarding his contention are (1) the temporal proximity of the restriction to the events of September 11; and (2) that he was told his correspondence was restricted because of that day's events.  Plaintiff, however, admits that he was subject to correspondence restrictions—albeit not precisely the same ones—prior to September 11.  (See Pl.'s Opp. To Defs.' Mot. For

Summ. J., Aff.)  Additionally, Plaintiff adduces no evidence whatsoever to controvert Defendants' evidence that Plaintiff (1) maintained communications with his fugitive siblings in Jordan; (2) was aware of his siblings' escape plan before they carried it out; and (3) received coded language in written letters.[15]

Thus, the record belies Plaintiff's account to the extent Plaintiff's averment concerning September 11 can be understood to imply that September 11 was the only reason for the correspondence restriction in question.[16]  And because Plaintiff has not rebutted Defendants' showing that the serious security concerns that existed played—at the least—a very substantial role in prompting the correspondence restriction, Plaintiff's First Amendment claim fails.  Thus, the Court will grant Defendants' motion as to Count Seven.


## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for judgment on the pleadings or, in the alternative, summary judgment.  Because Plaintiff's motion to vacate this Court's April 1, 2010 Order is unnecessary and has

---

[15]    In fact, as noted, Plaintiff expressly acknowledges receiving coded communications while in prison.

[16]    Or, by extension, that the restriction was imposed only because he was an ethnic Arab.  (See Pl.'s Opp. To Defs.' Mot. For Summ. J., at 1.)

been treated as a response to Defendants' motion, it will be denied as moot. Finally, Plaintiff's application for pro bono counsel will be denied.[17] An appropriate Order will follow.

---

[17] <u>Tabron v. Grace</u>, 6 F.3d 147 (3d Cir. 1993) lists several factors relevant to this determination. At the threshold, it instructs the court to determine whether "the plaintiff's claim has arguable merit in fact and law." <u>Id.</u> at 155. As this Court's grant of judgment in Defendants' favor reflects, Plaintiff's claims in this case do not satisfy this standard. This conclusion is not a product of Plaintiff's <u>pro se</u> status; the issues dealt with in this memorandum were not particularly complex, were thoroughly investigated, and were pursued by a litigant who has extensive experience representing himself in federal court.